UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEXANDER J. HEAD,

                 Petitioner,

vs.                          Case No.  2:07-cv-272-FtM-36SPC

SECRETARY, DEPARTMENT OF CORRECTIONS
and FLORIDA ATTORNEY GENERAL,

                 Respondents.

_____

## OPINION AND ORDER

### I. Status

Petitioner Alexander Head (hereinafter "Head" or "Petitioner") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 and memorandum of law (Doc. #2, Memorandum) on April 24, 2007[1] challenging his plea-based conviction for attempted second-degree murder and violation of probation entered in the Twentieth Judicial Circuit Court, in Collier County, Florida.[2]  Petition at 1.

---

[1] The Petition was docketed and filed in this Court on April 30, 2007. The Court, however, applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." *Alexander v. Sec'y Dep't of Corr.*, 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

[2] Counsel for Respondent states that neither the Magistrate Judge, nor the United States District Judge, assigned to this case handled Petitioner's state proceedings.  Response at 1, fn. 1. However, the records show that Magistrate Judge Sheri Polster Chappell presided once in a waiver of speedy trial hearing in Petitioner's underlying State case, which took place on December 10, 2001. *See* Exh. 1 at 4 (citing page number located at the top of
(continued...)

Respondent filed a Response (Doc. #16, Response) in opposition to
the Petition and attached supporting exhibits (Doc. #15, Exhs. 1-
18) consisting of the trial court's records and Petitioner's post-
conviction pleadings.   Petitioner filed a Reply (Doc. #18, Reply)
in opposition to the Response.   This matter is ripe for review.

## II.  Procedural History

The State Attorney charged Petitioner with attempted second-
degree murder with a deadly weapon arising from an incident on
August 21, 2001, wherein Petitioner repeatedly stabbed his wife
thirty-one times with a knife (01-2039CFA), and violation of
probation (01-107CFA).   *See generally* Exh. 1.  On August 12, 2002,
Petitioner entered a *nolo contedere* plea to both charges.   *Id.* at
17-31, 60 (reviewing plea form).[3]  The terms of the plea agreement
were memorialized in the written plea agreement, which was executed
by Petitioner.   Exh. 1 at 60-61.   The trial court accepted
Petitioner Head's plea, adjudicated him guilty on the violation of

---

[2](...continued)
the page).    The record shows that Judge Chappell's previous
involvement in this case was very limited.  Indeed, neither counsel
for Respondent, nor Petitioner, recognized that Judge Chappell was
previously involved in this case.  Considering the Judge's one-time
appearance for a limited hearing, there are no grounds to support
Judge Chappell's *sua sponte* recusal.

[3]Unless otherwise noted, the page numbers referenced herein are
to the page of the identified document as it appears on the Court's
case management electronic computer filing system.   The page
numbers referenced herein for Respondent's exhibits are to the page
of the identified document as it appears, handwritten, on the
bottom of the page.

probation, and deferred his sentencing on the attempted second-degree murder charge until September 5, 2002.

On September 3, 2002, Head filed a motion to withdraw his plea and motion to dismiss counsel.[4]  Exh. 1 at 6.  Petitioner, through a new defense counsel, alleged that he felt "'bullied'" into entering a plea [by defense counsel] and thought he had "'no choice' but to plea to the charges."  *Id.*  The State filed a response in opposition to Head's motion, referring to the plea colloquy and specifically noting that the trial court had inquired not once, but twice, as to the voluntariness of Head's plea.  *Id.* at 12-16.

The trial court held a hearing on Petitioner's motion to withdraw his plea on October 25, 2002, and November 22, 2002, at which the court heard testimony from the Petitioner, from former defense counsel Shannon Brown, and from the Petitioner's mother, Virginia Heinz.  Exh. 2.  Upon the conclusion of the hearing, the court entered an order denying Petitioner's motion and sentenced Petitioner to twenty years imprisonment with a minimum mandatory of ten years followed by ten years probation as a Habitual Violent Felony Offender.  *Id.* at 56-59 (order); Exh. 2 at 156 (hearing).

---

[4]Shannon Brown, Assistant Public Defender, represented Petitioner through the plea process and represented Petitioner until he filed his motion to withdraw plea and motion to dismiss counsel.  Once attorney Brown withdrew her appearance, attorney John Musca, a private defense counsel, entered his appearance on behalf of Petitioner.

On May 9, 2003, Petitioner filed a petition for a belated appeal pursuant to Fla. R. App. P. 9.141(c) in the appellate court on grounds that neither his defense counsel, nor the trial court advised him of his right to appeal. Exh. 4. The appellate court granted Petitioner's motion for a belated appeal. Exh. 6. Thereafter, Petitioner filed his *pro se* appellate brief, Exh. 7, arguing that the trial court abused its discretion by denying his motion to withdraw plea prior to sentencing based on the evidence presented during the hearing. *Id.* at 6. Specifically, Petitioner again submitted that based on defense counsel's advice he thought that entering a plea was his only option. *Id.* Petitioner also argued that he only remembered speaking to his counsel on "limited occasions," that counsel told him that his case was "more than she could handle," and that counsel never discussed with him the "insanity defense." *Id.* at 9. The State filed an Answer brief in opposition to Petitioner's contentions. Exh. 8. On December 10, 2004, the appellate court *per curiam* affirmed the trial court's order denying Petitioner's motion to withdraw his plea. Exh. 9.

On April 25, 2005, Petitioner filed a post-conviction motion pursuant to Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 motion"). Exh. 11. Petitioner raised four grounds for relief, although many issues in the grounds were related. *Id.* In ground one, Petitioner argued that the plea colloquy before the trial court was deficient because there was no factual basis established

to support the guilty plea; the trial court did not sufficiently inquire into the waiver of his rights to support a determination that the waiver was knowing, voluntary, and intelligent; and the trial court did not make a sufficient inquiry to determine that Petitioner fully understood the consequences of his plea.  Based on the foregoing, Petitioner argued that "manifest injustice" occurred during his plea colloquy before the trial court.  *Id.* at 2-3. Additionally, Petitioner argued, in ground two, that he was denied effective assistance of defense counsel because counsel did not ensure that he understood the consequences of his plea; there was no factual basis established by the trial court to support the charges; and, counsel did not ensure that he knowingly, intelligently, and voluntarily entered into the plea.  In ground three, Petitioner argued that his plea was involuntary because he suffers from a "developmental disability," and, at the time he entered the plea, he was under the influence of a "psychotropic medication."  In ground four, Petitioner argued that the trial court committed a fundamental error when it relied on the State's improper notice of intent to seek habitualization when sentencing him.  *See* Exh. 11.

On June 7, 2005, the post-conviction court entered an order, *sua sponte*, dismissing ground four of the motion on the basis that the State filed its "Habitual Violent Felony Offender Notice" on July 30, 2002, which clearly stated that the State sought to have

Petitioner declared a habitual violent felony offender.  The post-conviction court then directed the State to file a response to Petitioner's remaining three grounds of relief.  Exh. 14 (referencing exhibit A, the order denying relief on ground four and directing response, attached to exhibit 14).  The State filed a response, Exh. 13, in opposition to Petitioner's Rule 3.850 motion. On July 13, 2006, the post-conviction court entered an order denying Petitioner relief on his motion.  Exh. 14.

On August 11, 2006, Petitioner appealed the post-conviction court's order of denial raising the first three grounds he previously raised in his Rule 3.850 motion.  Exh. 15.  On February 9, 2007, the appellate court, without a response from the State, *per curiam* affirmed the post-conviction court's order.  Exh. 16. On April 24, 2007, Petitioner initiated the instant federal habeas action.

### III.  Applicable § 2254 Law

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action.  *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *Penry v. Johnson*, 532 U.S. 782, 792 (2001). The statute of limitations that governs the filing of this Petition is set forth at 28 U.S.C. 2244(d).  Respondent concedes that the Petition is

timely filed in this Court.  Response at 8.  The Court agrees that the Petition was timely filed.[5]

Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts.  *Stewart v. Sec'y Dep't of Corr.*, 476 F.3d 1193, 1208 (11th Cir. 2007)(citation omitted). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).  The following legal principles apply to this case.

## A.  Deference to State Court Decision

A federal court must afford a high level of deference to the state court's decision.  *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[5]The State court's grant of Petitioner's motion for a belated appeal tolled the deadline for Petitioner's federal Petition. *Jimenez v. Quarterman*,___ U.S. ____, 129 S. Ct. 681, 686 (2009)(holding that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of 2244(d)(1)(A).")

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See Brown v. Payton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Blankenship v. Hall*, 542 F.3d 1253, 1271 (11th Cir. 2008); *Ferguson*, 527 F.3d at 1146; *Wright v. Sec'y Dep't of Corr.*, 278 F.3d 1245, 1253-54 (11th Cir. 2002).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. *Brown*, 544 U.S. at 141; *Mitchell* v. Esparza, 540 U.S. 12, 15-16 (2003). It is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the

reasoning nor the result . . . contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Mitchell*, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedent if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), *cert. denied*, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable," a substantially higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted), *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Mitchell*, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. *Yarborough v. Alvarado*, 541 U.S. 652, 663-64 (2004).

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). A factual finding by a state court is presumed to be

correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Henderson*, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001), *cert. denied*, 534 U.S. 1046 (2001) (citation omitted). An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*. *Rolling v. Crosby*, 438 F.3d 1296, 1299 (11th Cir. 2006), *cert. denied sub nom. Rolling v. McDonough*, 542 U.S. 913 (2006).

   **B.   Federal Review of a Guilty or *Nolo Contedere* Plea**

   "A knowing and voluntary guilty plea waives all constitutional challenges to a conviction." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992)(citing *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. Unit B. 1981)); *see also Hutchins v. Sec'y Dep't of Corrections*, 273 Fed. Appx. 777 (11th Cir. 2008)(affirming district court's dismissal of a petition challenging effectiveness of counsel when the plea was knowingly and voluntarily entered). A guilty plea precludes claims of constitutional deprivations occurring prior to entry of a plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (stating "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense

-10-

with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *see also Tiemans v. U.S.*, 724 F.2d 928, 929 (11th Cir. 1984).

However, the law is well-settled that a guilty plea does not waive a claim for relief that implicates the voluntariness of the plea itself. *See Tollett*, 411 U.S. at 267; *Hill v. Lockhart*, 474 U.S. 52 (1985); *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983). Thus, only challenges to the voluntariness and intelligent entry of a guilty plea can be advanced on appeal. *Machibroda v. U.S.*, 368 U.S. 487, 493 (1962); *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991); *see also Wilson*, 962 F.2d at 997. The entry of a plea of *nolo contendere*, *i.e.* a no contest plea, which is what Petitioner entered, has the same legal effect in a criminal proceeding as a plea of guilty. *Hudson v. United States*, 272 U.S. 451, 455 (1926) (stating that a plea of *nolo contendere* is, like a plea of guilty, an admission of guilt for purposes of the case); *Williams v. Wainwright*, 604 F.2d 404, 407 (5th Cir. 1979)(holding that a plea of *nolo contendere* waives all non-jurisdictional defects);[6] *Carter v. Gladish,* Case No. 8:03-cv-1194T17TBM, 2005 WL 1712263 *9 (M.D. Fla. 2005)(noting under Florida law a plea of *nolo*

---

[6]In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*contedere* has the same legal effect in a criminal proceeding as a guilty plea).

### C.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d) and *Strickland v. Washington*, 466 U.S. 668 (1984).  *Newland v. Hall*, 527 F.3d 1162, 1183-84 (11th Cir. 2008).  The *Strickland* test applies to challenges of guilty pleas, as well as to convictions by jury. *Hill*, 474 U.S. at 58-59.

In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance.  First, Petitioner must show that counsel's representation was deficient, *i.e.*, that it fell below an objective standard of reasonableness under prevailing professional norms.  In the guilty plea context, the first prong of *Strickland* requires that the Petitioner show that his plea was not voluntary "because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases."  *Scott v. United States*, 325 Fed. Appx. 822, 824 (11th Cir. 2009)(citing *Hill,* 474 U.S. at 56-57).  Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, and need only provide the client with an understanding of the law in relation to the facts in order that the client may make an informed and

conscious choice between entering a guilty plea and going to trial.
*Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).
Counsel is required to make an independent examination of the
facts, circumstances, pleadings and laws involved, and then offer
an informed opinion as to the best course to be followed in
protecting the interests of the client. *Id.* Collateral relief is
only available to a petitioner if he "prove[s] serious derelictions
on the part of counsel sufficient to show that his plea was not,
after all, a knowing and intelligent act." *McMann v. Richardson*,
397 U.S. 759, 774 (1970).

Second, Petitioner must show that the attorney's deficient
performance prejudiced him, *i.e.*, that there was a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different. Petitioner
must demonstrate that "counsel's constitutionally ineffective
performance affected the outcome of the plea process, meaning the
defendant must show 'a reasonable probability that, but for
counsel's errors,' he would have entered a different plea." *Scott*,
325 Fed. Appx. at 824 (quoting *Hill*, 474 U.S. at 59).[7]   In

_____

[7]There are limited exceptions to a petitioner's obligation to
satisfy the aforementioned "prejudice" requirement. The exceptions
arise when "[c]ircumstances giving rise to a presumption of
prejudice include those in which the accused is denied counsel at
a critical stage of his trial, the accused's counsel "entirely
fails to subject the prosecution's case to meaningful adversarial
testing," or the accused is "denied the right of effective cross-
examination." *United States v. Cronic,* 466 U.S. 648, 658
(continued...)

evaluating whether there is a reasonable probability that a petitioner would have insisted on going to trial, the court considers whether petitioner had available a defense that would likely have borne fruit at trial. *Hill*, 474 U.S. at 59. With respect to a claim that counsel failed to adequately investigate the case, the prejudice inquiry will "depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Id.* "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Id.*

## IV. Discussion

### A.  Federal Evidentiary Hearing

Petitioner requests that the Court hold an evidentiary hearing on his Petition. Reply at 1,7. This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, *Chandler v. McDonough*, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. *Schriro*,

---

[7](...continued)
(1984)(other quotations and citations omitted).

550 U.S. at 474; *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034 (2004).

**B.  Analysis of the Federal Petition**

Petitioner raises two grounds challenging the voluntary, intelligent and knowing entry of his *nolo contedere* plea.  *See generally* Petition.  In particular, Petitioner raises the following two grounds for relief:

> **Ground One:** Petitioner's plea was involuntarily because he was taking Elavil at the time and deprived of other psychotropic medication, may have been experiencing "black outs," was unaware of what charges he was tendering a plea on, and the trial court lacked a factual basis upon which he could enter a plea;

> **Ground Two:** Defense counsel rendered ineffective assistance by failing to investigate or adequately advise Petitioner of an "insanity defense," failing to request a competency hearing, and failing to ensure that Petitioner's plea was knowing and intelligent.

*Id.*; *see also* Reply.  Although raised as two separate grounds for relief, certain issues in these grounds overlap and will be discussed together.

Petitioner, in pertinent part, submits that "[the record] is not at all clear that [Petitioner] understood the nature of the criminal charges to which he plead[] no contest, and the record is devoid of any determination that [P]etitioner was competent in that he knew the nature and quality of his acts and had the capacity to determine right from wrong at the time of [the] offense."  MOL at 4.  In Response, Respondent, in summary, argues that the transcript depicting the plea colloquy and the plea form bearing Petitioner's

signature, establishes that Petitioner knowingly, intelligently, and voluntarily entered his plea. *See generally* Response.

The Court examines the State courts' decisions in light of the AEDPA standards summarized above. In the trial court's order denying Petitioner's motion to withdraw, the trial court found Petitioner entered his plea voluntarily, knowingly and intelligently. Exh. 1 at 58. Specifically, the trial court ruled:

> It is clear from the testimony of [defense counsel] that [Petitioner] was well aware of the charges he was facing, the fact that the State had filed a Notice of Habitual Violent Felony Offender against him, the fact that he had a pending probation violation case and all plea offers.
>
> [Counsel's] testimony indicates that she had known the [Petitioner] prior to this case, since she represented him in the Aggravated Assault case, Case #01-107-CFA. In the present case, she testified that she wrote the [Petitioner] letters apprising him of her pre-trial preparation, she visited the [Petitioner] and spoke to him in jail several times, but at least on six occasions and spoke to the Defendant's mother regularly about the status and defense of the case.
>
> . . . . .
>
> The [Petitioner] claims that he was pressured into taking the plea and that [counsel] gave him no option or choice. He also testified that he acknowledged he did the crime and deserved some time and punishment but "twenty years is ridiculous." [Counsel's] testimony clearly refutes these claims. [Counsel] testified that she conveyed the State's first offer to the [Petitioner] on March 28, 2002 while continuing to prepare the [Petitioner's] case for trial by taking depositions. [Counsel] retained Dr. Kling to determine if an issue of competency or a defense of insanity could be raised. Dr. Kling concluded that the Defendant was competent to proceed and Ms. Brown concluded that she did not have a good faith legal basis to raise either competency or sanity issues.
>
> On July 30, 2002, after further negotiations with the State, [defense counsel] received an offer of twenty

years state prison followed by probation.  She personally
went to [the prosecutor's] office to discuss mitigators
on behalf of the [Petitioner], trying to negotiate the
best deal for the [Petitioner] and seeking to obtain an
offer of ten years.  From that day on, [counsel]
testified that she asked [the State] at least five
additional times if she could offer some other prison
term to the [Petitioner] that was less than twenty years.
[Counsel] also testified that she spoke to the
[Petitioner] at least three times between July 30, 2002
and August 12, 2002. [Counsel's] testimony establishes
that at no time did she perceive that the Defendant was
afraid of her, that he was being coerced by her or that
there was any failure of communication between her and
the [Petitioner].  As a matter of fact, [counsel] stated
that her impression was that the [Petitioner] had no
misunderstanding of the facts of his case or the terms of
his plea.

. . . . .

The [Petitioner] clearly admits that he deserved to be
punished for this crime.  Had the [Petitioner] not wanted
to accept the State's offer, the [Petitioner] could have
chosen to proceed to trial.  The Court specifically asked
the [Petitioner] <u>twice</u> during the plea colloquy whether
he was entering into the plea freely and voluntarily.

The Court finds that Mr. Head may have been depressed or
anxious on the date he entered the plea; however, this
Court is well aware that many people become depressed
when they are charged with a crime and facing lengthy
prison sentences, but that his mental condition did not
rise to the level of mental weakness or coercion which
prevented him from entering into a plea voluntarily,
knowingly, and intelligently nor did [defense counsel]
coerce or force him into taking this plea.

Exh. 1 at 57-58 (emphasis in original).

    Similarly, in denying Petitioner's Rule 3.850 motion, the

post-conviction court, referring in large part to the hearing held

before the trial court and its order, denied Petitioner relief,

finding that the facts developed in the record conclusively refuted

Petitioner's claims.  *See generally* Exh. 14.  With respect to the Petitioner's purported confusion about which charges he entered a plea to, the post-conviction court found:

> Defendant also attempts to fabricate confusion by quoting the trial court's question, "Do you understand that by entering into this plea you will not have a probation violation hearing nor will you have a trial."  Defendant asserts that "It is truly difficult to understand the court's statement, was he [sic] speaking solely of not having a hearing and trial for the VOP plea or in a moment of judicial expedition overlook the fact that the waiver must be knowing, intelligent, and voluntary." When viewed in isolation, the question may be unclear; however, when read in the context of the entire plea colloquy, it is clear that the trial court was referring to both of the cases in which Defendant entered a plea. Defendant cannot manufacture confusion after the fact by pulling quotes out of context from the plea colloquy in an attempt to establish that his plea was involuntary.

Exh. 14 at 5.  With regard to Petitioner's prescription medication, the post-conviction court found:

> As the trial court specifically inquired into the medication that Defendant was taking and the effect it had on his ability to understand the proceedings, and Defendant indicated that it had no affect on his ability to understand the proceedings, the record refutes his claim.  *Kirby v. State*, 733 So. 2d 1054 (Fla. 2d DCA 1999); *see also Iacono v. State*, 31 Fla. L. Weekly D1558 (Fla. 4th DCA June 7, 2006).

Exh. 14 at 7.   With regard to Petitioner's allegations that the trial court lacked a factual basis for his plea, the post-conviction court found:

> As pertains to Defendant's claim that the trial court failed to establish a factual basis for the plea, in establishing a factual basis, the trial court can rely upon police affidavits.  *Farran v. State*, 694 So. 2d 877,

-18-

> 878 (Fla. 2d DCA 2004).  In the case at bar, the trial
> court stated, during the plea colloquy, "Based upon your
> admissions as well as my review of the booking sheet in
> the 01-2039 case I'm going to find that there is a
> factual basis upon which this plea can be based." [] The
> booking sheet, which contains the police affidavit, sets
> forth a factual basis for the plea. [] As the trial court
> established a factual basis for the plea, the record
> refutes Defendant's claim and he has failed to
> demonstrate an entitlement to relief.

Exh. 14 at 3 (internal citations omitted).

The Court finds that the State courts' factual determinations were not an unreasonable determination based on the evidence presented.  The State courts' decisions were also not contrary to clearly established federal law.  At the outset, the Court finds that the trial court established a factual basis for Petitioner's plea by referencing Petitioner's booking sheet and police affidavit.  *Id.*; *see also* Exh. 14 at 142-147 (booking sheet and police affidavit).  Upon review of the transcript of the plea colloquy, the trial court asked Petitioner questions and ensured that Petitioner understood the consequences of his plea, which charges he was tendering a plea on, and the rights he was waiving.  *See* Exh. 1 at 17-30.  Petitioner specifically stated that no one made him any promises if he entered the plea, nor did anyone force, threaten, or coerce him into entering the plea.  Petitioner answered in the affirmative, on two occasions, that he understood the proceedings.  Petitioner specifically stated that the Elavil prescription he was taking for depression did not affect his

understanding of the proceedings.[8]  There is nothing in the record that suggests Head's plea or admissions in open court were anything but the truth.  A plea colloquy carries a strong presumption of truth.  *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987).  Petitioner also signed a plea form memorializing the terms of his plea agreement.

Petitioner next faults defense counsel for failing to ensure that his plea was knowing and intelligent, failing to request a competency hearing, and for failing to investigate an "insanity defense."  Petition at 6; MOL at 2, 4.  In denying this claim, the post-conviction court cited *Strickland*, the clearly established federal law on point for this issue.  The post-conviction court found "[a]s the record refutes [Petitioner's] claim that the trial court was deficient with regard to [Petitioner's] plea colloquy, [Petitioner] has failed to establish that trial counsel's performance at the plea colloquy was deficient."  Exh. 14 at 6.

The Court finds that the State court's denial of Petitioner's ineffective assistance of counsel claim is not contrary to clearly established law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  28 U.S.C. § 2254(d).

---

[8]In fact, Petitioner remained only on the Elavil prescription during the later hearing on his motion to withdraw his plea.

The record shows that Petitioner received reasonably effective assistance of counsel and made an informed choice to enter his plea. *See generally* Exh. 2. During the post-plea hearing held before the trial court, defense counsel testified that the court-appointed expert reviewed Petitioner's medical files from previous treating physicians and determined Petitioner's competency was not at issue. Thus, defense counsel did not have a good faith basis to raise an argument concerning his competency. *Godinez v. Moran*, 509 U.S. 389, 402 fn. 13 (1993)(noting that the court is not required to make a competency determination in every case and is only necessary when a court has reason to doubt the defendant's competence).

The record conclusively establishes that defense counsel prepared Petitioner's case for trial, took depositions, and, at the same time, actively engaged with the State in plea negotiations on Petitioner's behalf. Specifically, from the State's twenty-year plea offer on July 30, 2002, defense counsel met with the State at least five additional times in an attempt to negotiate a sentence of less than twenty years for Petitioner. *See* Exh. 1 at 58.

It is well established that the entry of a guilty plea waives a multitude of federal constitutional rights, including the privilege against compulsory self-incrimination, the right of confrontation, the right to a jury trial, the right to a speedy trial, and the right to require the prosecutor to prove the crime

beyond a reasonable doubt. *Tollett*, 411 U.S. at 267 (stating "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of a guilty plea."); *Tiemans*, 724 F.2d 928, 929 (11th Cir. 1984)(finding "a guilty plea waives all nonjurisdictional defects occurring prior to the time of a plea, including violations of the defendant's rights to a speedy trial and due process."); *United States v. Broce*, 488 U.S. 563 (1989). This waiver extends to ineffective assistance of counsel claims that do not attack the voluntariness of the plea, such as, Petitioner's claim *subjudice* that defense counsel did not discuss the "insanity defense" with him. *See Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981), *cert. denied*, 456 U.S. 992 (1982). Thus, only challenges to the voluntariness and intelligent entry of a guilty plea can be advanced on appeal. *See also Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). Petitioner has not shown that his plea was involuntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Petition for Writ of Habeas Corpus is **DENIED** and this case is **DISMISSED with prejudice.**

2.    The Clerk of Court shall enter judgment accordingly, terminate any pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this 9th day of September, 2010.

Charlene Edwards Honeywell
United States District Judge

SA: alj
Copies: All Parties of Record